**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBIN ZAHRAN and<br>KAREN ZAHRAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  11-cv-08391 |
| | ) | |
| PNC Bank, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PNC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

PNC Bank, N.A. ("PNC"), by and through its counsel, Michael I Rothstein and Brian C. Haussmann, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

**INTRODUCTION**

In essence, Plaintiffs' complaint alleges that PNC, as a bank that furnishes information to credit reporting agencies, inaccurately reported the status of Plaintiffs Robin and Karen Zahran's account with PNC. Plaintiffs allege that by inaccurately reporting the status of their account to unnamed credit reporting agencies, PNC engaged in fraudulent inducement (Count I); breached a settlement agreement executed by the parties (Count II); committed common-law fraud (Count III); violated the Illinois Consumer Fraud Act (Count IV); and engaged in defamation, slander, and libel (Count V).

The Court should dismiss Plaintiffs' claims for at least three reasons. First, the Fair Credit Reporting Act ("FCRA" or the "Act"), 15 U.S.C. § 1681 *et seq.*, preempts each of Plaintiffs'

claims. Second, Plaintiffs have no private right of action under the FCRA. Third, regardless of preemption, Plaintiffs fail to allege the elements necessary to sustain their common law claims.

## BACKGROUND

The following facts are alleged in the complaint. The Court must accept well pleaded allegations in a complaint for purposes of resolving a motion to dismiss under Rule 12(b)(6). *See PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 952 (N.D. Ill. 2011).

According to the complaint, sometime in or about 2006 and 2007, National City Bank (the predecessor in interest to PNC) issued an unsecured line of credit to Plaintiffs in the amount of $100,000. (Compl. ¶ 5.) In 2009, PNC brought an action against Plaintiffs to collect the amount then past due on the line of credit. (*Id.* ¶ 12.)

In an effort to settle PNC's claim against Plaintiffs, the parties executed a Settlement Agreement and Stipulation (the "Settlement Agreement"). (Compl. at Ex. 1; Ex. A.[1]) Under the terms of the Settlement Agreement, Plaintiffs settled their obligation—totaling over $100,000— for $40,000 to be paid in quarterly installment payments, with the final payment due on or before October 1, 2011. (Compl. Ex. 1 ¶ 1; Ex. A ¶ 1.) The Settlement Agreement provided that upon its execution, PNC would dismiss its action against Plaintiffs, which PNC did. (Compl. ¶17, Ex. 1 ¶ 3; Ex. A ¶ 3.) However, the Settlement Agreement also allowed PNC to vacate the dismissal if the Plaintiffs failed to make any of the installment payments. (Compl. Ex. 1 ¶ 5; Ex. A ¶ 5.) Plaintiffs further allege that under the Settlement Agreement, PNC released its claims against Plaintiffs and Plaintiffs released their claims against PNC. (Compl. ¶ 18.) Notably, the Settlement Agreement did not obligate PNC to take any action with respect to any credit report or credit reporting agency. (Compl. Ex. 1; Ex. A.)

---

[1] For the Court's convenience, PNC attaches a copy of the Settlement Agreement as Exhibit A, which is more legible than the copy attached to plaintiffs' complaint.

Plaintiffs allege that they made the quarterly payments due under the Settlement Agreement, including the final payment due on October 1, 2011. (Compl. ¶¶ 19, 38.) According to the complaint, by October 14, 2011, PNC reported to unnamed credit reporting agencies the account status of plaintiffs' account as "[c]losed" and the payment status as "[l]egally paid in full for less than the full balance." (*Id.* at Ex. 3, p. 2.) The payment status reflects that Plaintiffs settled their obligation, amounting to more than $100,000, for $40,000. (*Id.*)

The gravamen of Plaintiffs' complaint is that PNC either falsely reported negative information to unidentified credit reporting agencies or failed to correct negative information previously provided to the credit reporting agencies. (Compl. ¶¶ 27, 22.) Plaintiffs allege that PNC's current reporting to unnamed credit reporting agencies breaches the Settlement Agreement. (*Id.* ¶ 27.) In addition, Plaintiffs allege that the Settlement Agreement obligated PNC to report to credit reporting agencies that Plaintiffs' account was paid in full as of January 1, 2011. (*Id.* ¶ 22.)

## ARGUMENT

## I. THE FAIR CREDIT REPORTING ACT PREEMPTS PLAINTIFFS' CLAIMS.

The Court should dismiss the complaint in its entirety because the FCRA, 15 U.S.C. § 1681 *et seq.*, preempts Plaintiffs' state law claims. 15 U.S.C. § 1681t(b)(1)(F).

The FCRA imposes a duty on furnishers of information, such as PNC,[2] to provide accurate information to credit reporting agencies ("CRAs"). 15 U.S.C. § 1681s-2(a). Under this provision, a furnisher may not provide information if it knows or has reasonable cause to believe that the information is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A); *Purcell v. Bank of Am.*, No.

---

[2] PNC is a "furnisher" of information for purposes of the FCRA. Although the Act does not define "furnisher," courts have defined the term as "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union." *Donley v. Nordic Props., Inc.*, 99 C 4677, 2003 WL 22282523, at *5 (N.D. Ill. Sept. 30, 2003).

0:09 CV 356, 2010 WL 4955542, at *2 (N.D. Ind. Nov. 30, 2010); *Hukic v. Aurora Loan Servs., Inc.*, No. 05 C 4950, 2007 WL 2563363, at *12 (N.D. Ill. Aug. 31, 2007).

The FCRA also expressly preempts all state law claims based in any part on a furnisher's reporting of information to a CRA. The Act provides: "[n]o requirement or prohibition may be imposed under the law of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). In a recent decision, the Seventh Circuit Court of Appeals determined that this provision preempts all state law claims—both statutory and common law—implicating the conduct of furnishers regulated by Section 1681s-2. *Purcell v. Bank of Am.*, 659 F.3d 622, 625–26 (7th Cir. 2011); *see also Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009) ("The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules.") (quoting *Cippollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992)).

In this case, Plaintiffs' claims each allege conduct regulated by Section 1681s-2(a) of the FCRA, and are therefore preempted. Indeed, the gravamen of Plaintiffs' complaint is that PNC either falsely reported negative information to unidentified CRAs or failed to correct negative information previously provided to the CRAs. (*See* Compl. ¶¶ 21-22, 25-27, 32, 39.) These allegations form the basis of—and are incorporated into—each count of Plaintiffs' complaint. (*See id.* ¶¶ 28, 35, 42, 52, 56.) This alleged conduct is precisely the type of conduct regulated by the FCRA. *See Hukic*, 2007 WL 2563363, at *12 (finding state law claims preempted where "[Plaintiff] alleges that defendants knowingly reported false information regarding the status of [his] account to credit reporting agencies—conduct regulated by § 1681s-2(a).").

Accordingly, courts faced with similar allegations consistently have found that common law claims such as those alleged here were preempted and should be dismissed. *See Purcell*, 659 F.3d 622 at 626; *Woods v. Prot. One Alarm Monitoring, Inc.*, 628 F. Supp. 2d 1173, 1185–86 (E.D. Cal. 2007) (concluding that the FCRA preempted plaintiffs' defamation claim, which alleged defendants "failed to provide accurate information and allegedly failed to correct and update the information"); *Hukic*, 2007 WL 2563363, at *12 (concluding that Section 1681t(b)(1)(F) preempted allegations related to plaintiff's breach of contract claims concerning defendants' conduct as furnishers of information); *Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 945 (S.D. Ohio 2010) (claim under state consumer protection statute preempted); *Lufkin v. Capital One Bank (USA), N.A.*, No. 3:10-CV-18, 2010 WL 2813447, at *4 (E.D. Tenn. July 16, 2010) (contract claims preempted); *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866, at *5 (E.D. Mich. Dec. 17, 2008) (contract claims preempted); *Campbell v. Chase Manhattan Bank*, USA, N.A., 2005 WL 1514221, at *17 (D.N.J. June 27, 2005) (common-law misrepresentation claim preempted).

In addition, Plaintiffs' claim for defamation is also separately preempted under Section 1681h(e) of the FCRA, which prohibits a consumer from bringing any action "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information . . . against any person who furnishes information to a consumer reporting agency . . . ." 15 U.S.C. § 1681h(e).

The law is thus clear that Plaintiffs' Illinois common law claims are preempted by the FCRA and should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FAIR CREDIT REPORTING ACT.

Because the FCRA preempts Plaintiffs' state law claims, Plaintiffs' only possible cause of action against PNC is under Section 1681s-2(a) of the FCRA. Even if Plaintiffs attempted to state such a claim, however, they could not succeed because the Act provides no private right of action for the alleged conduct.

As explained above, Plaintiffs' claims stem from PNC's alleged failure to properly and accurately report the status of Plaintiffs' account—conduct regulated by Section 1681s-2(a). Although the FCRA provides consumers with the right to dispute the accuracy of information furnished to a CRA, under well-established law, the Act does not provide consumers with a private right of action to enforce a furnisher's violation of its duties under Section 1861s-2(a). 15 U.S.C. § 1681s-2(c); *Purcell*, 659 F.3d 622 ("Section 1681s-2(c)(1) provides that the portions of the Act allowing awards of damages to private parties do not apply to claims under subsection (a)."); *Lang v. TCF Nat'l Bank*, 338 Fed. App'x 541, 544 (7th Cir. 2009) ("Section 1681s-2(c) specifically exempts violations of [section] 1681s-2(a) from private civil liability; only the Federal Trade Commission can initiate suit under that section."); *Criddell v. Transunion LLC*, No. 09 C 6235, 2010 WL 1693093, at *5 (N.D. Ill. Apr. 27, 2010) ("[A] consumer may not bring an individual claim for violation of [section] 1681s-2(a) . . . ."); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005) ("It is undisputed that there is no private right of action under section 1681s-2(a).").

The FCRA does provide a limited private right of action for a furnisher's failure to investigate the accuracy of a credit report after receiving notice from a CRA of a dispute by the consumer. 15 U.S.C. § 1681s-2(b). However, a furnisher's duty to investigate is triggered only after a CRA notifies the furnisher of the dispute; a direct consumer complaint to the furnisher

does not trigger the duty. *Id.; Purcell*, 2010 WL 495542, at *3; *Rollins*, 379 F. Supp. 2d at 967. Because Plaintiffs have alleged that their only complaints were made directly to PNC (*see* Compl. ¶¶ 21-22, 25, 32, 39, 57; Compl. Ex. 2) and do not allege any failure by PNC to investigate any dispute, Plaintiffs cannot state a claim under Section 1681s-2(b) and thus have no private right of action against PNC.

For these reasons, Plaintiffs cannot bring a claim against PNC under the FCRA.

## III.   REGARDLESS OF PREEMPTION, PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR RELIEF UNDER ILLINOIS LAW.

Regardless whether the FCRA preempts Plaintiffs' Illinois common law claims, all such claims should be dismissed pursuant to Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Defined Space, Inc. v. Lakeshore E., LLC*, No. 1:10 CV 03297, 2011 WL 3882714, at *1 (N.D. Ill. Sept. 1, 2011) (Gottschall, J.) (dismissing complaint). A complaint that sets forth "labels and conclusions or a formulaic recitation of the elements of a cause of action" is not sufficient; nor is a complaint that "tenders naked assertions devoid of further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' complaint fails these standards.

### A.   *Plaintiffs fail to state claims for fraudulent inducement and fraud (Counts I, III).*

In Counts I and III, Plaintiffs fail to state claims for fraudulent inducement and fraud. Plaintiffs fail to plead that PNC made any false statement. Indeed, Plaintiffs fail to plead any element of fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Finally, the Settlement Agreement's non-reliance clause precludes Plaintiffs from sufficiently alleging reasonable reliance, a required element of any fraud claim.

To state a claim for fraud under Illinois law, the plaintiff "must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Arriaga v. Wells Fargo Bank, N.A.*, 09 C 2115, 2011 WL 4738522, at *9 (N.D. Ill. Sept. 30, 2011) (citing *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 766 (7th Cir. 2010)).

### 1. Plaintiffs fail to plead the core elements of fraud.

Plaintiffs must plead allegations of fraud with particularity under Rule 9(b). Fed. R. Civ. P. 9(b); *Reger Dev., LLC*, 592 F.3d at 764. To do so, a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Arriaga*, 2011 WL 4738522, at *9 (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008)).

Plaintiffs' claims for fraudulent inducement and common-law fraud fail to satisfy these Rule 9(b) requirements. Most glaringly, Plaintiffs fail to plead that PNC made a false statement, the most basic element of any claim for fraud. Moreover, the complaint contains no allegations identifying the content of any alleged misrepresentations or the person who made the alleged misrepresentations. Instead, Plaintiffs refer generally to "promises and commitments made by PNC prior to and through the draft of the agreement" and "promises made in the agreement." (Compl. ¶¶ 30–32, 43–47.) These are conclusory allegations that fail to provide the requisite particularity. *Arriaga*, 2011 WL 4738522, at *11.

Indeed, the only statement specifically alleged to have been made by PNC was in fact true, as Plaintiffs' complaint itself establishes. In support of each of their claims, Plaintiffs allege

that in October 2011, PNC reported to unidentified CRAs that Plaintiffs' debt to PNC was "legally paid in full for less than the full balance." (*See* Compl. at Ex. 3, p. 2.) This statement was entirely accurate. By their own admission Plaintiffs had, pursuant to their settlement with PNC, legally satisfied a debt of over $100,000 in full by paying only $40,000. (*Id.* ¶¶ 15, 19, 37-38.) Because no false statements are alleged, Plaintiffs have failed to state claims for fraudulent inducement and common-law fraud, and Counts I and III should therefore be dismissed.

In addition, promises of future conduct are not actionable as fraud in Illinois except in rare cases in which the plaintiff can demonstrate an "egregious" pattern of conduct amounting to a "scheme" to defraud. *Song v. PIL, LLC*, 640 F. Supp. 2d 1011, 1019 (N.D. Ill. 2009) (dismissing fraud claim based upon alleged promises made to plaintiff). In this case, Plaintiffs allege only that PNC made unidentified "promises and commitments" that it did not keep. (Compl. ¶¶ 30–32, 43–47.) Even if the promises were specifically pled, which they are not, the simple failure to keep them does not, as a matter of law, give rise to a claim for fraud. *Song*, 640 F. Supp. 2d at 1019. Because Plaintiffs plead nothing more, their fraud claims should be dismissed for this reason as well.

### 2. The non-reliance clause in the Settlement Agreement bars Plaintiffs' claims for fraudulent inducement and common-law fraud.

Even if Plaintiffs could plead a false statement of material fact, which they cannot, the Settlement Agreement precludes their fraud claims. In Illinois, a non-reliance clause in an agreement will preclude a claim for fraud based upon alleged representations not made expressly in the written agreement. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 458, 813 N.E.2d 1138, 1144 (1st Dist. 2004); *Rissman v. Rissman*, 213 F.3d 381, (7th Cir. 2000) ("[A] written anti-reliance clause precludes any claim of deceit by prior representations."); *PharMerica*

*Chicago, Inc.*, 772 F. Supp. 2d at 952 ("[N]onreliance clauses in contracts preclude the introduction of parol evidence even in fraud cases.").

In this case, the Settlement Agreement contains an enforeceable non-reliance clause. It provides: "The parties acknowledge and warrant that this Stipulation and Settlement Agreement has been entered into voluntarily by them and that in executing this Stipulation and Settlement Agreement the parties hereto are not relying on any statement, representation or promise made to them except as set forth herein." (Compl. Ex. 1 ¶ 9; Ex. A ¶ 9.) By agreeing to this provision, Plaintiffs and PNC agreed that they did not rely on any representations found outside of the Settlement Agreement. *See Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 458, 813 N.E.2d 1138, 1144 (1st Dist. 2004) ("Having agreed in writing that they did not rely on any representations found outside the subscription documents, plaintiffs cannot be allowed to argue fraud based on such representations."); *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 645 (7th Cir. 2002) (explaining that a non-reliance clause precludes a fraud suit because reliance is an element of fraud).

Both of Plaintiffs' claims for fraud are based upon alleged extra-contractual representations. In both counts, Plaintiffs allege that PNC committed fraud by promising, in connection with the Settlement Agreement, to "delete the negative information supplied to the credit bureaus and credit reporting agencies." (Compl. ¶ 22.) Even if such a promise could amount to actionable fraud, which it cannot, *see Song*, 640 F. Supp. 2d at 1019, no such representation appears expressly in the Settlement Agreement. (Ex. A; Compl. at Ex. 1.) The non-reliance clause expressly precludes Plaintiffs from relying on such statements. Accordingly, Counts I and III of Plaintiffs' complaint should be dismissed.

### B. *Plaintiffs fail to state a claim for breach of contract (Count II).*

In ruling on a motion to dismiss a claim for breach of a written agreement, the court may look to the terms of the agreement itself to determine whether a claim has been stated. Fed. R. Civ. P. 10(c); *Reger Dev., LLC*, 592 F.3d at 764. In this case, by the contract's own terms, PNC has satisfied each of its obligations under the Settlement Agreement, and therefore the Court should dismiss Plaintiffs' claim for breach of contract in Count II.

To state a claim for breach of contract under Illinois law, a party must plead (1) the existence of a valid contract, (2) substantial performance of the contract, (3) defendant's breach of the contract, and (4) damages resulting from the breach. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 791 (N.D. Ill. 2010). Courts in Illinois must interpret a written contract within its four corners: "an agreement when reduced to writing . . . speaks for itself, and the intention with which it was executed must be determined by the language used." *Id.* (quoting *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992–93 (7th Cir. 2007)). Moreover, where the contract contains an integration clause, claims based on alleged promises not set forth in the written agreement are barred. *Extra Equipamentos E Exportacao Ltd. v. Case Corp.*, 541 F.3d 719, 723 (7th Cir. 2008); *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 951 (N.D. Ill. 2011).

In this case, Plaintiffs allege that PNC breached the Settlement Agreement by "refusing to delete the negative information given to the credit bureaus as of the effective date of the agreement (1/1/2011)," and, apparently, by reporting in October 2011 that Plaintiffs had legally paid their debt in full for less than the full balance. (Compl. ¶¶ 35, 39.) Both claims of breach fail because the Settlement Agreement itself imposes no obligation with respect to the date by which PNC must report any information to the CRAs or the content of any report. To the contrary, the

Settlement Agreement required only that PNC release its claims to the more than $100,000 owed to it by the Plaintiffs and dismiss its lawsuit with prejudice, both of which PNC did. (Compl. ¶ 17, Ex. 1 ¶ 4; Ex. A ¶ 4.) Because the Settlement Agreement, by its plain terms, does not impose the obligations PNC is alleged to have breached, Plaintiffs' breach of contract claim fails. *See Hickman*, 683 F. Supp. 2d at 792 (dismissing plaintiff's breach of contract claim with prejudice where the contract terms contradict plaintiff's allegations); *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 856 (N.D. Ill. 2008) (dismissing breach of contract claim because contract terms did not require actions plaintiff alleged were required of defendant).

Moreover, even if the Settlement Agreement had imposed obligations on PNC with respect to its credit reports, PNC's conduct is wholly consistent with its terms. The Settlement Agreement made PNC's release contingent upon Plaintiffs' payment, in full, of four installment payments, and made clear that in the event that Plaintiffs failed to pay any of the installment payments, PNC could vacate the dismissal of the lawsuit and have judgment entered against plaintiffs for the full amount of the debt. (Compl. Ex. 1 ¶ 5; Ex. A ¶ 5.) Thus, PNC could not have truthfully reported that plaintiffs satisfied the debt in full on January 1, 2011. As of that date, Plaintiffs had promised to satisfy the obligation, but had not actually done so. Plaintiffs did not satisfy the debt until making the final payment due under the Agreement, in October of 2011. (Compl. Ex. 1 ¶ 1; Ex. A ¶ 1.) PNC then immediately and truthfully reported that Plaintiffs had done so. (Compl. Ex. 3.) While the Settlement Agreement imposed no such obligation on PNC, PNC's conduct was nonetheless consistent with the Settlement Agreement. For that reason as well, Plaintiffs' breach of contract claim fails.

Finally, to the extent that Plaintiffs' claim is based upon unidentified "promises and commitments" of PNC that were not made part of the Settlement Agreement (*see* Compl. ¶¶ 30–

32, 43–47), the claim is barred by the integration clause in the Settlement Agreement, which provides that the Settlement Agreement "constitutes a single, integrated written agreement expressing the entire Stipulation and Settlement Agreement between the parties hereto," and that it "supercedes any prior understandings and Settlement Agreements." (Ex. A, ¶12.) *See Extra Equipamentos E Exportacao Ltd.*, 541 F.3d at 723; *PharMerica Chicago, Inc.*, 772 F. Supp. 2d at 951.

For all of these reasons, Plaintiffs' claim for breach of contract fails and should be dismissed with prejudice.

### C. *Plaintiffs fail to state a claim under the Illinois Consumer Fraud & Deceptive Business Practices Act (Count IV).*

The Court should dismiss Count IV because Plaintiffs fail to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.* (West 2011). To state a claim for the violation of the Consumer Fraud Act, a plaintiff must allege "that (1) defendant committed a deceptive act or practice; (2) defendant intended for plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) plaintiff suffered actual damages; and (5) plaintiff's damages were proximately caused by defendant's deceptive conduct." *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 381 Ill. App. 3d 1042, 1050 (1st Dist. 2008). A plaintiff must plead a claim for consumer fraud with the same particularity required for a common-law fraud claim. *Id.* at 1051.

Plaintiffs fail to plead an essential element of a consumer fraud claim: a deceptive act by PNC. The same allegations that form the bases of Plaintiffs' fraudulent misrepresentation and common-law fraud claims form the basis of Plaintiffs' consumer fraud claim—namely, that PNC made false statements or misrepresentations. As established above in section III.A.1, however, not only do Plaintiffs fail to plead that PNC made a false statement, but the only statement

Plaintiffs specifically allege that PNC made was in fact true. Because Plaintiffs fail to allege any deceptive act by PNC, Plaintiffs fail to state a claim for consumer fraud. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 671 (7th Cir. 2001) (dismissing claim for failure to plead deceptive act).

### D. Plaintiffs fail to state claims for defamation, slander, and liable (Count V).

Likewise, the Court should dismiss Plaintiffs' defamation claim because Plaintiffs fail to plead that PNC made any false statements about Plaintiffs. To state a claim for defamation, a plaintiff must plead that "the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with him or her." *Id.* To state a claim for defamation *per se*, as Plaintiffs attempt to do here, a plaintiff must plead the substance of the statement with "precision and particularity." *Id.*; *see also McDermott v. Continal/Midland, Inc.*, 02 C 8063, 2003 WL 223440, at *3-4 (N.D. Ill. Jan. 31, 2003) (dismissing defamation claim for failure to allege false statement).

Plaintiffs' defamation claim fails because, for the same reasons discussed above in section III.A.1, the only statement of fact specifically alleged to have been made by PNC was in fact true. Plaintiffs allege that in October 2011, PNC reported to unidentified CRAs that Plaintiffs' debt to PNC was "legally paid in full for less than the full balance." (*See* Compl. at Ex. 3, p. 2.) But this statement was entirely accurate—by their own admission plaintiffs had, pursuant to their settlement with PNC, legally satisfied a debt of over $100,000 in full by paying only $40,000. (*Id.* ¶¶ 15, 19, 37-38.) No other statement is alleged. Plaintiffs' failure to plead that

PNC made any false statements warrants dismissal of Plaintiffs' claim for defamation. *See McDermott v. Continal/Midland, Inc.*, 02 C 8063, 2003 WL 223440, at *3 (N.D. Ill. Jan. 31, 2003) (dismissing defamation claim for failure to plead a false statement).

## CONCLUSION

WHEREFORE, for all the reasons set forth above, PNC Bank, N.A. respectfully requests that the Court dismiss Plaintiffs' complaint in its entirety and with prejudice, and that it grant PNC any further relief that is appropriate under the circumstances.


Dated: January 13, 2011                    Respectfully submitted,

                                           **PNC BANK, N.A.**


                                           /s/: Brian C. Haussmann


Michael I Rothstein
Brian C. Haussmann
TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
Telephone: (312) 762-9476
Facsimile: (312) 762-9451
*Attorneys for PNC Bank, N.A.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 13, 2012, a true and correct copy of the

foregoing **PNC's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs'**

**Complaint** was served via email and via first class U.S. mail as follows:

Robin Zahran                         Robin Zahran
Karen Zahran                         Karen Zahran
721 Acorn Hill Lane                  1301 W. 22nd St., Ste. 815
Oakbrook, IL 60523                   Oakbrook, IL 60523
robinzahran@sbcglobal.net            robinzahran@sbcglobal.net


/s/:  Brian C. Haussmann

# EXHIBIT A

11/29/2010   14:44  3127288874                SDRENKA-PROBST                    80874 P.002/008

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

PNC BANK, NA                          )
                                      )
    Plaintiff,                    )
                                      )
    vs.                           )          NO.   2009 L 001594
                                      )
ROBIN ZAHRAN, KAREN ZAHRAN,           )
                                      )
    Defendants.                   )

### Settlement Agreement and Stipulation

NOW COME the Plaintiff PNC BANK, NA, successor in interest to National City Bank (hereinafter referred to as "Bank"), by and through its attorneys Weltman, Weinberg & Reis Co., and the Defendants, ROBIN ZAHRAN and KAREN ZAHRAN, by and through their attorney Eric Sdrenka of the law office of SDRENKA AND PROBST, and hereby stipulate and agree as follows:

**RECITALS:**

WHEREAS there is now pending before the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, an action entitled PNC Bank, NA v. Robin Zahran and Karen Zahran, No. 2009 L 001596 (hereinafter referred to as the "Action");

WHEREAS the parties hereto have reached an agreement to resolve any and all issues, claims and causes of action by Bank against Defendants Robin Zahran and Karen Zahran (hereinafter referred to collectively as "The Zahrans") and to put to rest any and all claims among the parties hereto relating to claims that were or might have been alleged in the Action.

NOW THEREFORE, for good and valuable consideration, including the covenants contained herein, it is agreed as follows:

1

**COVENANTS:**

1.      The Zahrans shall pay the total sum of $40,000.00 to Bank as follows:

      a.      Initial payment of $10,000.00 on or before January 1, 2011;

      b.      $10,000.00 paid on or before April 1, 2011;

      c.      $10,000.00 paid on or before July 1, 2011; and

      d.      $10,000.00 paid on or before October 1, 2011.

2.      The checks for the above described payments shall be payable to PNC Bank and Weltman, Weinberg & Reis Co., LPA, and mailed to Plaintiff's Counsel at 180 N. LaSalle St., Ste 2400, Chicago, IL 60601.

3.      After this agreement is executed by the parties, Plaintiff's counsel shall cause the dismissal of the Action with prejudice and for the court to retain jurisdiction of the matter to enforce the terms of the Stipulation and Settlement Agreement. The parties agree that each party shall bear its own costs and attorney's fees.

4.      In consideration of the promises and agreements set forth in this Stipulation and Settlement Agreement, the Bank, on behalf of itself, and all of its present, former and future representatives, agents, attorneys, successors, legatees and assigns, does hereby completely release and forever discharge the Zahrans from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, including without limitation all claims arising under the local, state or federal common law, statute or regulation, whether known or unknown, matured or unmatured, suspected or unsuspected, which the Bank ever had, now has or preceding the date hereof, resulting from, arising out of or in any way, directly or indirectly, connected with any acts or omissions which were raised  or could have been raised in

2

the Action, including any claims for costs, expenses or attorney's fees in connection with the Action.

5.      The failure or neglect of the Zahrans to pay any installment payment in full under Paragraph 1 within ten (10) business days of the appropriated payment deadline shall constitute an event of default. Upon the occurrence of an event of default, which remains uncured for ten (10) business days following written notice of such default, the Bank may move to vacate the dismissal entered in the Litigation in accordance with Paragraph 3 hereof and request a judgment against the Zahrans computed as follows:

        (a)     The amount of $108,109.38 plus interest as prayed for in Bank's Action less the amount of any installment payment made by the Zahrans in accordance with Paragraph 1 herein; and

        (b)     Any additional reasonable attorney's fees and costs incurred by the Bank after the event of default.

Notice of an event of default must be in writing and will be deemed given if mailed to the Zahrans at 721 Acorn Hill Lane, Oakbrook, IL 60523.

6.      The parties hereto agree that the payment of the aforementioned consideration and the execution of this Settlement Agreement are done entirely for the purpose of compromise and settlement of disputed claims. Neither payment of said consideration nor the compromise and settlement of said disputes, nor anything contained herein, shall be construed as an admission by the parties of any liability to or damages suffered by any other party, person or entity.

7.      The Bank agrees and warrants that it shall not bring, commence, institute, maintain or prosecute or allow any person, entity or organization to bring, commence, institute, maintain

3

11/29/2010   14:44  3127268874              SUREHKA-PROBST              #0974  P.005/908

or prosecute in their name, any other action at law or in equity or any legal proceeding, claim or counterclaim whatsoever, against the Zahrans, who are released herein, other than an action to enforce this Settlement Agreement or based on a future event or occurrence. This Stipulation and Settlement Agreement may be pleaded as a full and complete defense to, and may be used as a basis for, injunctive relief against, any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of this Settlement Agreement.

8.     The parties hereto acknowledge that they have been represented by independent legal counsel throughout the negotiations, which culminated in the execution of this Stipulation and Settlement Agreement. The parties hereto acknowledge that they have been fully advised by their attorneys with the respect to their rights and obligations under this Stipulation and Settlement Agreement and understand those rights and obligations. The parties hereto warrant to each other than each of them is authorized and able to execute this Stipulation and Settlement Agreement.

9.     The parties acknowledge and warrant that this Stipulation and Settlement Agreement has been entered into voluntarily by them and that in executing this Stipulation and Settlement Agreement the parties hereto are not relying on any statement, representation or promise made to them except as set forth herein.

10.    The signatories as set forth below represent and warrant that under penalty of perjury under the laws of the State of Illinois that they have the full right, power and authority to enter into and execute this Stipulation and Settlement Agreement and that this Stipulation has been read and understood by them.

4

11/29/2010  14:44  3127268974          SDRENKA-PROBST          #0874 P 008/008

11.     This Stipulation and Settlement Agreement may be amended or modified only by writing that specifically refers to this Stipulation, expressly states that it constitutes an amendment hereto, and is subscribed to by al the parties hereto.

12.     This Stipulation constitutes a single, integrated written agreement expressing the entire Stipulation and Settlement Agreement between the parties hereto.  It supersedes any prior understandings and Settlement Agreements.

13.     This Stipulation and Settlement Agreement may be executed in counterparts that together shall constitute a single Stipulation and Settlement Agreement, and each of which shall be an original for all purposes.

AGREED:

Plaintiff PNC BANK, NA

By: _____ Bank OFFICER

Date: 12-29-10

Defendant Robin Zahran

By: _____

Date: _____

Defendant Karen Zahran

By: _____

Date: _____

Document Prepared By:
Eric Sdrenka
SDRENKA AND PROBST
Attorneys for Defendants
333 North Michigan Ave., Suite 614
Chicago, IL 60601
(312) 726-3208
Attorney No. 23529

5